# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MONTY WARD,

    Plaintiff,

v.

DESERT EAGLE, LLC and WAYNE NEWTON,

    Defendants.

2:06-CV-00938-RCJ-LRL

**ORDER**

    Currently before the Court is a Motion to Interplead Erin Miel, Inc. as a Third Party Defendant, to Interplead Disputed Funds, and to Order Erin Miel to Comply with Writs of Garnishment (#94) filed by Plaintiff Monty Ward ("Plaintiff") on April 28, 2009. Erin Miel filed an Opposition to Motion to Interplead (#99) on May 22, 2009. Plaintiff filed a Reply (#97) on May, 21, 2009, and a Supplemental Reply (#109) on June 18, 2009.

    Also before the Court is a Motion to Intervene and Motion to Discharge/Quash Writ of Garnishment and to Release Garnished Property (#96/#98) filed by Erin Miel, Inc. on May 21, 2009. Plaintiff filed an Opposition (#105) on June 15, 2009, and Erin Miel filed a Reply (#113) on June 29, 2009.

    Also before the Court is Plaintiff's Motion for Fees and Costs (#114) filed on July 1, 2009. Defendants Desert Eagle LLC and Wayne Newton filed an Opposition to Plaintiff's Motion for Fees and Costs (#132) on July 27, 2009, and Plaintiff filed a Reply (#134) on August 10, 2009.

## BACKGROUND

This case involves a breach of contract claim brought by Plaintiff against Defendants

Desert Eagle, LLC ("Desert Eagle") and Wayne Newton ("Newton")(collectively "Defendants"). According to the Complaint, the parties entered into an employment agreement in 2003 whereby Defendants employed Plaintiff as a private pilot. (Complaint (#1)). The term of the contract was for ten years and had an initial starting salary of $92,000. The Complaint states that "[i]n reliance on assurances of continued employment and payment from Defendants for a minimum of 10 years, [Plaintiff] left his employment of 16 years as a captain and pilot with Horizon Airlines and became Defendants' private pilot." Id. at 2. However, in 2005, Defendants decided to discontinue using their private aircraft. Id. Plaintiff states that he "satisfactorily performed all his obligations" under the parties' contract, but that Defendants refused to pay Plaintiff for his services after that time. As such, Plaintiff brought a lawsuit against the Defendants to enforce the terms of the contract.

On August 28, 2008, the parties filed a Stipulation and Order to Dismiss with Prejudice (#66) in the case. According to the stipulation, the parties had entered into a settlement agreement regarding the claims asserted in Plaintiff's Complaint. An order dismissing the case was filed the next day. (Order (#67)).

On January 27, 2009, Judgment was entered in the case on behalf of Plaintiff because Defendants breached the terms of the settlement agreement. Plaintiff was awarded "$455,250.54, together with interest accruing thereon at $126.86 per day from January 1, 2009 until paid in full, plus any reasonable attorneys' fees and costs [Plaintiff] may incur in enforcing" the Judgment. (Judgment (#72) at 3).

In order to enforce the Judgment, Plaintiff filed writs of execution and garnishment against various entities Plaintiff believed employed Newton's services or owed money to Newton or Desert Eagle. Two of the entities that were served with writs of execution and garnishment were the MGM Grand Hotel, LLC ("MGM Grand") and Erin Miel, Inc. ("Erin Miel"). According to Erin Miel, it is a company "that secures the services of Wayne Newton and over a dozen back-up musicians and staff for purposes of conducting performances at

various entertainment venues."[1]  (Erin Miel Inc.'s Motion to Intervene (#96) at 2).  Erin Miel and MGM Grand entered into a contract on August 27, 2008, for Erin Miel "to secure Wayne Newton and a team of musicians and staff to conduct performances over several dates at the MGM Grand."  Id.  According to Erin Miel, although the contract was not signed until March 31, 2009, Erin Miel performed "its obligations under the contract for the dates of February 28, 2009 through March 4, 2009, and for the dates of April 23, 2009 through April 29, 2009."  Id. at 2.  As such, the MGM Grand allegedly owed Erin Miel money for the performances.

Following the service of the writ of execution and garnishment on Erin Miel, Erin Miel, in interrogatories attached to the writ, stated that it was Newton's employer and that it paid Newton a weekly salary of $2,872.91.[2]  Id. at Exhibit 7.  According to the interrogatories attached to the writ of execution served on the MGM Grand, the MGM Grand was not indebted to Desert Eagle.  (Plaintiff's Motion to Interplead Erin Miel, Inc. (#94) at Exhibit 2, p. 3).  The MGM Grand stated, however, that "[w]ith respect to Wayne Newton, MGM Grand [] has entered into a putative and unsigned contract with Erin Miel, Inc., a _____ corporation f/s/o Wayne Newton."  Id.  The MGM Grand noted that although the contract "calls for net payment to Erin Miel," it is for services performed by Wayne Newton.  Id.  As a result, the MGM Grand was "unsure whether the garnishment will attach to any or all of the money owed pursuant to the Agreement."  Id.  Thus, the MGM Grand planned on interpleading "all the money to the Court for determination of the respective interests of the parties."  Id.

On March 11, 2009, the MGM Grand filed a Complaint for Interpleader and Declaratory Relief (#1) in Case No. 2:09-cv-471-PMP-LRL.  Summons in that case was served on Plaintiff,

---

[1] Newton is the President and Director of Erin Miel according to the company's filings with the Nevada Secretary of State. (Motion to Interplead Erin Miel, Inc. (#94) at Exhibit 3).  Erin Miel's Secretary and Treasurer is Kathleen McCrone who Plaintiff asserts is Newton's wife. (Plaintiff's Opposition to Erin Miel, Inc.'s Motion to Intervene (#105) at 3 n.1).

[2] Erin Miel garnished Newton's salary for the weeks of March 15, March 29, April 5, and April 12, but failed to garnish his salary for the weeks of March 8, March 22, and April 19. (Plaintiff's Motion to Interplead Erin Miel (#94) at 4 and Exhibit 8). According to Erin Miel, it failed to garnish Newton's salary only on the weeks Newton did not receive a paycheck. Moreover, Erin Miel claims that it cannot pay Newton a salary at this time because the money used for that has been interpleaded with the court. (Erin Miel, Inc's Opposition to Motion to Interplead (#99) at 5).

Desert Eagle and Wayne Newton.  The MGM Grand did not serve Erin Miel, nor was Erin Miel listed in the Certificate of Interested Parties (#7).  Following the filing of the complaint for interpleader, the MGM Grand filed a Motion to Consolidate Cases (#11) with the present action and a Motion to Interplead Funds (#13).  Both of these motions were granted on May 7, 2009.

Now, Plaintiff has filed a Motion to Interplead Erin Miel (#94) as a third party defendant and to order Erin Miel to comply with the writs of garnishment served in this case.  Erin Miel has also filed a Motion to Intervene and Motion to Discharge/Quash Writ of Garnishment and to Release Garnished Property (#96/98).

**DISCUSSION**

**I. Erin Miel's Motion to Intervene**

Following the consolidation of this case with the MGM Grand's interpleader action, Erin Miel moved the Court to intervene as a party pursuant to Fed. R. Civ. P. 24.  Rule 24(a)(2) provides that on timely motion, "the court must permit" anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may . . . impair or impede the movant's ability to protect its interest."  The Ninth Circuit has established "a four part test," which mirrors the federal rule, to determine if an applicant has the right to intervene.  Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002).  According to the test: (1) the "motion must be timely;" (2) the applicant must "assert a 'significantly protectable' interest relating to property or a transaction that is the subject matter of the litigation;" (3) the applicant must be "situated so that disposition of any action may as a practical matter impair or impede the interest;" and (4) the applicant's "interest must be inadequately represented by the parties."  Id. (citing Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1113-14 (9th Cir. 2000)).

Erin Miel argues that it should be allowed to intervene as a party because the Court interpleaded money that belongs to Erin Miel pursuant to a contract that Erin Miel had with the MGM Grand. (Motion to Intervene (#96/98)).  According to Erin Miel, a judgment

4

creditor "can only garnish property that belongs, or is owed to, the judgment debtor." Id. at 6. Erin Miel argues that its money, under the possession of MGM Grand, was improperly garnished by Plaintiff because Erin Miel was not the judgment debtor in the underlying suit. Id. Erin Miel states that it "is a separate legal entity from Wayne Newton." Id. As such, any money due and owing under Erin Miel's contract with the MGM Grand is the property of Erin Miel and not subject to garnishment against Newton. Id.

In response, Plaintiff argues that Erin Miel's motion to intervene should be denied because Erin Miel "failed to participate in MGM's action to interplead the MGM funds." (Plaintiff's Opposition to Erin Miel, Inc.'s Motion to Intervene (#105) at 8). In this regard, Plaintiff argues that Erin Miel waived its right to intervene at this point because Erin Miel had knowledge of the interpleading proceedings and failed to participate in that action. Id.

In this matter, the Court finds that intervention is appropriate because Erin Miel has a significant protectable interest relating to the funds at issue in the interpleader action. "An applicant has a 'significant protectable interest' in an action" if "(1) it asserts an interest that is protected under some law," and "(2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." In re Estate of Ferdinand E. Marcos Human Rights Litig., 536 F.3d 980, 984 (9th Cir. 2008)(quoting S.Cal.Edison Co. v. Lynch, 307 F.3d 794, 802 (9th Cir. 2002)). "The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant." Id. The "interest test," on the other hand, "is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established." Id. "Instead, the 'interest' test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Id.

Here, the parties concede that there was a contractual agreement between Erin Miel and the MGM Grand for the services of Wayne Newton. Moreover, the MGM Grand stated that the agreement called for the net payments under the contract to be paid to Erin Miel. As such, Erin Miel has shown that it has a contractual interest in the funds

5

interpleaded in this action. Based on this, Erin Miel's ability to protect its interest will be impaired or impeded by the disposition of this action if it is not allowed to intervene because Plaintiff has asserted a competing claim to the funds.

Thus, based on the foregoing, Erin Miel's motion to intervene is granted.

**II. Erin Miel's Motion to Discharge/Quash Writ of Garnishment and to Release Garnished Property**

Erin Miel also moves the Court for an order discharging, dissolving or quashing the writ of garnishment issued by the Court on February 10, 2009, "on the ground that the garnished funds are not the property or proceeds" payable by the MGM Grand to either Wayne Newton or Desert Eagle (the judgment debtors), "but rather, are the property or proceeds payable by MGM Grand Hotel, LLC to Erin Miel, Inc." (Erin Miel's Motion to Intervene and Motion to Discharge/Quash Writ of Garnishment (#96/98)). According to Erin Miel, it is a company "that secures the services of Wayne Newton and over a dozen back-up musicians and staff for purposes of conducting performances at various entertainment venues." Id. at 2. Erin Miel had a contract with MGM Grand to secure the services of Newton "and a team of musicians and staff to conduct performances over several dates." Id. Erin Miel asserts that the parties to that contract were the MGM Grand and Erin Miel: "Erin Miel, Inc. is the party that is legally bound to the Agreement. Erin Miel, Inc. is the signatory to the Agreement, along with MGM Grand." Id. at 3. In addition, all monies payable under the agreement were to be paid to Erin Miel. No money was to be paid to Wayne Newton. Id. Based on this, Erin Miel argues that the funds interpleaded with the Court belong to Erin Miel and were wrongly garnished. Id.

According to Plaintiff, Erin Miel's motion should be denied because it is "procedurally improper and untimely." (Plaintiff's Opposition to Erin Miel, Inc.'s Motion to Intervene and Motion to Discharge/Quash Writ of Garnishment (#105) at 4). Plaintiff claims that Erin Miel "failed to timely assert a third party claim to the MGM Funds in accordance with NRS 21.112 and failed to assert a third party claim pursuant to the procedure set forth in NRS 31.070," which Plaintiff asserts is the "exclusive remedy

available to a third party asserting a claim to property subject to a writ of garnishment." Id. at 3. In addition, Plaintiff argues that even if "Erin Miel's claim to the MGM Funds is not procedurally barred, [Plaintiff] is entitled to garnish the MGM Funds to offset the Judgment [because] Newton is both President and Director of Erin Miel." Id. at 4. As such, "Newton is inextricably intertwined with Erin Miel, such that the MGM Funds are properly the subject for garnishment." Id.

Fed. R. Civ. P. 69(a) states that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." According to that rule: "The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located." Based on this, the Court must look to Nevada law to determine whether garnishment of the MGM Funds is appropriate in this case.

A garnishment proceeding is a means by which a judgment-creditor seeks to reach property or credits of a judgment-debtor which are in the hands of a third person so that they may be applied in favor of the judgment. See Bd. of Tr. of Vacation Trust v. Durable Developers, Inc., 102 Nev. 401, 410, 724 P.2d 736, 743 (Nev. 1986)("Garnishment invests a plaintiff-garnishor with the right to satisfy his claim against a defendant with the debts due from a third-person, the garnishee, to the defendant.") "Garnishment is a purely statutory proceeding, aiming to invest the plaintiff with the right and power to appropriate to the satisfaction of his claim against the defendant debts due from the garnishee to the defendant." McKelvey v. Crockett, 18 Nev. 238, 2 P. 386, 387 (Nev. 1884).

NRS 31.240 states that "the court may order that a writ of garnishment issue, and thereupon cause the money, credits, effects, debts, choses in action and other personal property of the defendant in the possession or under the control of any third person to be attached as security for any judgment." A judgment creditor can only garnish property that belongs to, or is owed to, the judgment debtor. See NRS 31.249(2)(limiting the property that can be garnished to property "belonging to the defendant"). In order for property to be properly subject to a writ of execution, "it must be owned by the party against whom the

judgment is entered." Kulik v. Albers, Inc., 91 Nev. 134, 137, 532 P.2d 603, 605 (Nev. 1975). Moreover, because "[a] proceeding in garnishment is substantially an action at law by the judgment debtor in the name of the judgment creditor against the garnishee," the judgment creditor "stands upon no higher ground than the judgment debtor and can acquire no greater right than such debtor possesses" to the property. Network Solutions, Inc. v. Umbro Intern., Inc., 529 S.E.2d 80, 85 (Va. 2000); see also Grouse Creek Ranches v. Budget Fin. Corp., 87 Nev. 419, 488 P.2d 917 (Nev. 1971).

In this matter, although Erin Miel was not the judgment debtor in the underlying proceeding, it is an entity which Wayne Newton is both the director and president. In addition, Wayne Newton is employed by Erin Miel as evidenced by his weekly salary. Because of this, Plaintiff argues that its writ of garnishment on the MGM Grand was proper and that Plaintiff is entitled to the MGM Funds. In addition, Plaintiff argues that Erin Miel's motion to discharge/quash the writ of garnishment should be denied because it is untimely and procedurally incorrect. Finally, Plaintiff argues that Erin Miel is the alter ego of Wayne Newton and is therefore liable for Newton's debts.

### A.   Timeliness

Plaintiff argues that Erin Miel's motion is untimely because "NRS 21.112 implies the time frame in which a third party claimant must assert a claim to property that is the subject of an attachment/garnishment." (Plaintiff's Opposition to Erin Miel Inc.'s Motion to Intervene (#105) at 4-5). Plaintiff states that NRS 21.112, which "provides that a debtor that wishes to claim an exemption to property that has been levied upon has eight days from the time the notice of execution is mailed in order to assert such a claim," applies "by analogy," to a third party asserting a claim to garnished property. Id.

NRS 21.112 sets forth the procedure by which a judgment creditor can claim an exemption of property levied on by a writ of garnishment. According to that statute: "In order to claim exemption of any property levied on, the judgment debtor must, within 8 days . . . serve on the sheriff and judgment creditor and file with the clerk of the court issuing the writ of execution an affidavit setting out his claim of exemption." NRS

21.112(1). That provision does not address a third party claim to levied property. Although Plaintiff argues that this statute applies "by analogy," Plaintiff does not provide any other authority to support this argument.

Because there is no statutory provision establishing a deadline by which third party claims must be made, Plaintiff's argument that Erin Miel's claim should be dismissed because it is untimely under NRS 21.112 is denied.

### B.     Procedure

Plaintiff also argues that Erin Miel's motion to intervene and to quash the writ of garnishment is procedurally incorrect. According to Plaintiff, the exclusive remedy to a third party asserting a right to property levied upon by a writ of execution and garnishment is by NRS 31.070. Because Erin Miel failed to comply with the requirements of NRS 31.070, Plaintiff argues that the motion must be denied.

NRS 31.070 provides that if property levied on "is claimed by a third person as his property by a written claim verified by his oath or that of his agent," and "served upon the sheriff," the sheriff "must release the property" if the plaintiff fails "within 7 days after written demand to give the sheriff an undertaking executed by at least two good and sufficient sureties in a sum equal to double the value of the property levied on." NRS 31.070(1). The Nevada Supreme Court calls NRS 31.070 the "third party claims" statute. Elliot v. Denton & Denton, 109 Nev. 979, 980, 860 P.2d 725, 726 (Nev. 1993). According to that court: "This statute sets forth a very simple procedure for cases where . . . 'the property levied on is claimed by a third person as his [or her] property.'" Id. "All the claimant has to do under the statute is to make a sworn statement claiming rightful ownership and possession of the property levied-upon and present the claim to the sheriff." Id. The sheriff, in turn, "must release the property" unless the person who instituted the levy on the property "disputes the third party claim and gives to the sheriff an undertaking equal to double the value of the property." Id. "In cases in which the levying party puts up the required undertaking, NRS 31.070 provides for resolution of the opposing claims by 'motion to the court without the necessity of an independent action.'" Id.

9

The Nevada Supreme Court has stated that this statute provides "a complete and valid remedy to third persons whose property has been attached." Cooper v. Liebert, 81 Nev. 341, 344, 402 P.2d 989, 991 (Nev. 1965).

Although NRS 31.070 does appear to be the "exclusive" remedy for a third party claim to levied property, this case is procedurally different in that an interpleader action was filed before the property was turned over to the sheriff. In its answers to interrogatories attached to the writ of garnishment, the MGM Grand stated that it had a putative and unsigned contract with Erin Miel for performances by Wayne Newton at its establishment. (Plaintiff's Motion to Interplead Erin Miel (#94) at Exhibit 2). The MGM Grand asserted that it was "unsure whether the garnishment will attach to any or all of the money owed pursuant to the unsigned Agreement." As such, the MGM Grand planned to "interplead all money to the Court for determination of the respective interests of the parties." Id. The MGM Grand then filed a Complaint for Interpleader and Declaratory Relief with the court. As noted in the foregoing, the MGM Grand failed to name Erin Miel as a party to the interpleader action or to list it as an interested party.

Because the MGM Grand filed an interpleader action prior to the funds being levied by the sheriff, NRS 31.070 does not apply. Erin Miel followed the proper procedure by filing a motion to intervene in the interpleader action to assert its right to the funds and contest the propriety of the garnishment.[3]

### C.     Alter Ego

In addition to arguing that Erin Miel's motion is untimely and procedurally incorrect, Plaintiff argues that the motion should be denied because Plaintiff is entitled to the interpleaded funds. According to Plaintiff, Erin Miel is the alter ego of Wayne Newton and is therefore liable to Plaintiff for Newton's debts. (Plaintiff's Opposition to Erin Miel, Inc.'s Motion to Intervene (#105) at 9). In response, Erin Miel states that Plaintiff's argument is

---

[3] Plaintiff's argument that NRS 31.070 is the only remedy available to Erin Miel in this context is belied by the fact that Plaintiff filed a motion to interplead Erin Miel on April 28, 2009. In that motion, Plaintiff argued that the Court should interplead Erin Miel in order to "determine the rights of [Plaintiff] and Erin Miel to [the interpleaded] funds." (Plaintiff's Motion to Interplead Erin Miel (#94) at 3).

10

without legal or factual support. (Erin Miel, Inc.'s Reply in Support of Motion to Intervene (#113) at 4). Specifically, Erin Miel argues that there is no "legal theory" that allows a party "to pierce an individual and pursue a company." Id. In addition, Erin Miel argues that the factors necessary to show the existence of an alter ego weigh against piercing the corporate veil in this case.

Nevada law allows the "reverse piercing" of the corporate veil. LFC Mktg. Group, Inc. v. Loomis, 116 Nev. 896, 902, 8 P.3d 841, 845 (Nev. 2000). "The classic alter ego situation involves a creditor reaching the personal assets of a controlling individual to satisfy a corporation's debt." Id. "Reverse piercing," on the other hand, "involves a creditor reaching the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really the alter ego of the individual." Id. In Loomis, the court held that "conceptually" reverse piercing "is not inconsistent with traditional piercing in its goal of preventing abuse of the corporate form." Id. "Indeed, it is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the preexisting liability of the controlling party." Id. Accordingly, under Nevada law "reverse piercing is appropriate in those limited instances where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted." Id.

In determining whether it is appropriate to reverse pierce, the Nevada court cautioned that "the corporate cloak is not to be lightly thrown aside" and a court must consider various factors in making its determination. Id. According to the court, the elements for finding an alter ego, which must be established by a preponderance of the evidence, are: (1) the corporation "must be influenced and governed by the person asserted to be the alter ego;" (2) there must be "such unity of interest and ownership that one is inseparable from the other;" and (3) the facts must be such that "adherence to the corporate fiction or entity would, under the circumstances, sanction a fraud or promote injustice." Id. at 846 (citing Polaris Indus. Corp. v. Kaplan, 103 Nev. 598, 601, 747 P.2d

884, 886 (Nev. 1987)). Further, "the following factors, though not conclusive, may indicate the existence of an alter ego relationship:" (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities. Id.

According to Plaintiff, there are several indicators that Erin Miel is Newton's alter ego. Specifically, Plaintiff asserts that "Newton is the 100% shareholder of Erin Miel," and that "Erin Miel did not even sign the MGM contract until after Erin Miel and Newton had knowledge of the Writ issued to MGM."[4] Id. at 10. In addition, Plaintiff notes that the funds at issue in this matter are payable by MGM Grand to Erin Miel for services rendered by Newton. As such, Plaintiff argues that Erin Miel is nothing more than a "carefully designed business arrangement," to "avoid Newton's duty to pay his creditors." Id. at 11.

In response, Erin Miel argues that Plaintiff "does nothing to show that Erin Miel, Inc. has commingled funds with Newton, that Erin Miel is undercapitalized, or that corporate formalities were not followed." (Erin Miel, Inc.'s Reply in Support of Motion to Intervene (#113) at 5). Erin Miel claims that it has been in existence as an entity for decades, enters into agreements with concert venues, and keeps a current list of officers with the Nevada Secretary of State. Id. In addition, Erin Miel states that Plaintiff cannot show that it commingles funds with Newton. In this regard, Erin Miel claims that the money it receives from contractual agreements with concert venues goes to pay not only Newton, but a team of musicians and staff that conduct the performances. "For example, over $18,000 in salaries and costs are due and owing to musicians and others for the performances taking place between February 28 and March 4. Over $31,000 in salaries and costs are due and owing to musicians and staff for the performances that took place between April 23 and

---

[4] The fact that Erin Miel did not sign the contract until after the writ was issued is not determinative as to whether there was an enforceable agreement between the MGM Grand and Erin Miel. See J.A. Jones Const. Co. v. Plumbers and Pipefitters Local 598, 568 F.2d 1292 (9th Cir. 1978)(holding that a written contract is binding even if not signed by one of the parties if both act in reliance on it as a valid contract). Here, the MGM Grand has not asserted that it did not have a binding contract with Erin Miel. Moreover, the funds at issue in this matter are in consideration for Erin Miel's performance under the agreement.

April 29." (Erin Miel, Inc's Motion to Intervene and Motion to Discharge/Quash Writ of Garnishment (#96)). Thus, Erin Miel states that it is not the alter ego of Newton.

Based on the foregoing, the Court finds that it is not appropriate to pierce the corporate veil of Erin Miel at this time because Plaintiff has not put forth enough evidence to determine if Erin Miel is Wayne Newton's alter ego. However, because Wayne Newton is an employee of that company (as well as its president and director), the Court denies Erin Miel's motion to discharge/quash the writ of garnishment issued against it and Erin Miel's request to discharge the garnished property.

### III. Plaintiff's Motion to Interplead Erin Miel, Inc. as a Third Party Defendant, To Interplead Disputed Funds, and To Order Erin Miel to Comply with Writs of Garnishment

As noted in the foregoing, Plaintiff filed a motion to interplead Erin Miel in order to determine the parties' rights to the interpleaded funds. Because the Court grants Erin Miel's motion to intervene, Plaintiff's motion to interplead Erin Miel is denied as moot. In addition, the court in the case MGM Grand Hotel LLC v. Ward et al., 2:09-cv-471-PMP-LRL previously issued an order interpleading the disputed funds. As such, that motion is denied as moot. Thus, the only issue left to resolve in Plaintiff's motion is Plaintiff's request to order Erin Miel to comply with the writ of garnishment served on it.

According to Plaintiff, Erin Miel failed to properly garnish Newton's wages in accordance with the writ of garnishment. (Plaintiff's Motion to Interplead Erin Miel, Inc. (#94)). As such, Plaintiff requests that the Court order Erin Miel to (1) pay the non-exempt wages for the past weeks' arrearages immediately; (2) pay $1,000 in punitive damages for each missed pay period because the failure was unjustified and willful; and (3) timely pay Plaintiff all of Newton's future non-exempt wages to which Plaintiff is entitled pursuant to the terms of the writ. Id.

In response, Erin Miel states that it complied with the writ of garnishment "for weeks ending March 15, March 29, April 5, April 12, and April 19." (Erin Miel Inc.'s Opposition to Motion to Interplead (#99)). According to Erin Miel, "Newton did not receive a payroll check for the weeks ending March 8 and March 22, [and] any periods after April 19." Id.

Erin Miel alleges that "[t]his is because Erin Miel, Inc. received no funds from MGM Grand" after the money was interpleaded with the court. As such, Erin Miel argues that it is Plaintiff's own wrongful conduct that has caused Erin Miel's inability to issue payroll and comply with the writ of garnishment.

A judgment creditor is entitled to garnish the property of a judgment debtor including the judgment debtor's earnings. NRS 21.120. "If without legal justification an employer of the defendant refuses to withhold earnings of the defendant demanded in a writ of garnishment or knowingly misrepresents the earnings of the defendant, the court may order the employer to appear and show cause why he should not be subjected to penalties." NRS 31.297(1). If after such a hearing, "the court determines that an employer, without legal justification, refused to withhold the earnings of a defendant demanded in a writ of garnishment or knowingly misrepresented the earnings of the defendant," the court shall order the employer to pay the plaintiff "the amount of arrearages caused by the employer's refusal to withhold or his misrepresentation of the defendant's earnings." NRS 31.297(1). In addition, "the court may order the employer to pay the plaintiff punitive damages in amount not to exceed $1,000 for each pay period in which the employer has, without legal justification, refused to withhold the defendant's earnings." Id. Nevada has not defined "legal justification" in this context.

In this case, Erin Miel stated that it was Newton's employer and paid Newton a weekly salary of $2,872.91. (Plaintiff's Motion to Interplead Erin Miel, Inc. (#94) at Exhibit 7). Erin Miel asserts that it complied with the writ of garnishment because it garnished wages from paychecks Newton actually received. The only weeks it failed to garnish wages were the weeks Newton did not receive a paycheck. In addition, Erin Miel claims that it has not been able to pay Newton any wages after the funds from the MGM Grand were interpleaded with the Court.

At oral argument, Plaintiff asserted that it has filed additional writs of execution against Erin Miel. Because Erin Miel is an employer of Wayne Newton, Erin Miel is directed to comply with Plaintiff's writs and to timely pay Plaintiff all future non-exempt

earnings as required by NRS 31.295.[5]

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Erin Miel's Motion to Intervene (#96) is GRANTED.

It is FURTHER ORDERED that Erin Miel's Motion to Discharge/Quash Writ of Garnishment and to Release Garnished Property (#98) is DENIED.

It is FURTHER ORDERED that Plaintiff's Motion to Interplead Erin Miel, Inc. as a Third Party Defendant, to Interplead Disputed Funds, and to Order Erin Miel to Comply with Writs of Garnishment (#94) is GRANTED IN PART and DENIED IN PART.  Plaintiff's motion to interplead Erin Miel and motion to interplead disputed funds are DENIED as moot. Plaintiff's Motion to Order Erin Miel to Comply with Writs of Garnishment is GRANTED.

It is FURTHER ORDERED that Plaintiff's Motion for Fees and Costs Incurred in Enforcing a Judgment (#114) is DENIED.

DATED: This 2nd day of February, 2010.

_____
United States District Judge

---

[5] At this time Plaintiff's request for punitive damages for Erin Miel's failure to comply with the writ of garnishment is denied.